WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Steven Ray Newell, | No. CV-12-02038-PHX-JJT |
|---|---|
| Petitioner, | **ORDER** |
| v. | <u>DEATH PENALTY CASE</u> |
| Charles L. Ryan, *et al.*, | |
| Respondents. | |

Before the Court is Petitioner's motion for evidentiary development. (Doc. 56.) Petitioner seeks expansion of the record, discovery, and an evidentiary hearing on the claims alleged in his petition for writ of habeas corpus. Respondents oppose evidentiary development. (Doc. 57.) For the reasons set forth below, the motion is denied.

## **BACKGROUND**

**I.  The Crime**

Petitioner sexually assaulted and murdered eight-year-old Elizabeth Byrd, strangling her to death with the strap of her purse. A jury convicted him of first-degree murder, sexual conduct with a minor, and kidnapping. He was sentenced to death on the first-degree murder conviction. Except where otherwise indicated, the following factual summary is taken from the opinion of the Arizona Supreme Court affirming the convictions and sentences. *State v. Newell*, 212 Ariz. 389, 393–96, 132 P.3d 833, 837–40 (2006).

On the morning of May 23, 2001, a neighbor saw Elizabeth walking toward school with Petitioner following closely behind. Elizabeth knew Petitioner because he had dated her older sister.

About an hour later, a Salt River Project ("SRP") employee working in a field near the school came upon someone standing in an irrigation ditch. The person in the ditch turned and looked at him and then ran away. The employee noticed a rolled up piece of green indoor-outdoor carpeting in the water near where the person had been standing.

That afternoon, Elizabeth's mother arrived home to find that Elizabeth had not returned from school. When Elizabeth did not come home that night, the police were called. The officers were told that Elizabeth had not been in school that day. A missing persons report was called in.

The next morning, while searching the field near the school, Phoenix Police Department officers discovered a child's shoe, a children's book, a black purse or knapsack, a pair of socks, and a coin purse. That afternoon, a detective from the Maricopa County Sheriff's Office discovered Elizabeth's body in an irrigation ditch in the field, rolled up in green carpeting. Shoe prints were found along the ditch.

Later that day, the SRP employee went to the Sheriff's office after seeing a news report about the investigation. He was shown a photographic lineup, but he did not identify anyone in the lineup as the person he had seen in the ditch.

An autopsy revealed bruising on Elizabeth's hands, wrists, and forearms. A ligature was still tied around Elizabeth's neck, and there were abrasions on the left side of her neck, consistent with fingers grasping at the ligature trying to remove it. She also had bruising and an abrasion on her face.

The autopsy also revealed evidence of sexual assault. Elizabeth's vulva was bruised and the vaginal tract had abrasions, with a tear on the side of one of the abrasions. One abrasion in the vaginal tract went right up to the hymen, but the hymen itself was still intact.

1    The medical examiner concluded that Elizabeth died from asphyxiation due to ligature strangulation. Once the ligature had been tightened, Elizabeth likely died within a minute or two. The medical examiner further determined that it was likely that Elizabeth had stopped breathing before she was placed in the water.

Elizabeth's underwear, along with blood, bone, and tissue samples, were collected and sent to the Department of Public Safety ("DPS") lab for testing.

A detective from the Maricopa County Sheriff's Office contacted Petitioner on May 27, 2001. Petitioner agreed to come to the station to be interviewed. He was asked about the day of Elizabeth's disappearance and if he knew anything that might be helpful to the investigation. Petitioner described what he did that day but made no incriminating statements.

Petitioner was contacted again by a Sheriff's detective at Elizabeth's funeral on June 2, 2001. The detective went to the funeral to find Petitioner because he had been told that Petitioner was wearing Converse All-Star tennis shoes, the type of shoe that matched the prints found near Elizabeth's body. Petitioner voluntarily went to the station and again answered questions about his activities at the time of Elizabeth's disappearance. During the interview, Petitioner's shoes were taken to be compared with the footprints at the ditch. Two days later, an analyst from the Sheriff's office concluded that it was "highly probable" that the footprints at the crime scene had been made by Petitioner's shoes.

On the evening of June 4, two detectives contacted Petitioner and asked if he would consent to another interview. Petitioner agreed. Shortly after 8:00 p.m., the detectives began questioning him. The interrogation was videotaped. The detectives advised Petitioner of his *Miranda* rights. He waived those rights and agreed to speak with the detectives.

The questioning began in a manner similar to the two previous interviews, but became more accusatory after the second hour. Petitioner initially denied having anything to do with Elizabeth's death. Eventually, however, he acknowledged that he had been

1  with Elizabeth in the field on the morning of her disappearance. He admitted he had
2  grabbed her and placed her between his legs while he rubbed up against her, causing him
3  to ejaculate. He then acknowledged placing her in the water. When he saw the SRP
4  employee, he covered Elizabeth with the carpeting and ran off. Petitioner maintained that
5  Elizabeth was alive when he left her in the ditch and denied sexually abusing her. He was
6  taken to jail on the morning of June 5, 2001.

7  Later that day, the SRP employee was shown another photo lineup, which
8  included a picture of Petitioner. He identified Petitioner as the person he had seen in the
9  ditch.

10  A criminalist with the DPS crime lab conducted an analysis on Elizabeth's
11  underwear. Semen was found inside of the central crotch area. A DNA analysis
12  established that Petitioner was the likely source of the semen.

13  **II.     Procedural background**

14  On June 14, 2001, Petitioner was indicted on charges of first-degree murder,
15  sexual conduct with a minor, and kidnapping. On February 12, 2004, a jury convicted
16  him on all counts.

17  A sentencing hearing was held on the first-degree murder charge. In the
18  aggravation phase, the jury found that three aggravating circumstances had been proved
19  beyond a reasonable doubt: a previous conviction for a serious offense, under A.R.S. §
20  13–703(F)(2); the murder was committed "in an especially heinous, cruel or depraved
21  manner," § 13–703(F)(6); and at the time of the murder Petitioner was an adult and the
22  victim "was under fifteen years of age," § 13–703(F)(9).

23  In the mitigation phase of sentencing, Petitioner presented testimony from family
24  members, including his mother, stepfather, half-sister, and aunts. The testimony detailed
25  Petitioner's troubled childhood and family life, which featured extreme poverty, neglect,
26  and periods of homelessness. Petitioner's mother testified that he was sexually abused as
27  a child, once by a teenage neighbor and once by his mother's boyfriend. (RT 2/23/04

(a.m.) at 47–52.)[1] The testimony also recounted Petitioner's history of drug abuse, including his chronic use of methamphetamine, which began when he was in the seventh grade and his stepfather introduced him to the drug. (*See* RT 2/23/04 at 37–38.)

Although defense counsel retained experts to examine Petitioner, they did not present expert testimony about his drug use or mental health. The trial court precluded such evidence as a sanction for Petitioner's refusal, on counsel's advice, to submit to an examination by the State's expert.[2]

The jury determined that Petitioner should be sentenced to death for the first-degree murder conviction. The Arizona Supreme Court affirmed the convictions and sentences. *Newell*, 212 Ariz. 389, 132 P.3d 833.

Petitioner then pursued post-conviction relief ("PCR"). His Notice was filed on June 5, 2007. On May 23, 2008, the Arizona Supreme Court appointed counsel to represent Petitioner in the PCR proceedings. Counsel retained an investigator, a mitigation specialist, a neuropsychologist, and a pharmacologist.

On May 4, 2009, Petitioner filed his PCR petition, raising, among other claims, allegations that trial counsel performed ineffectively at sentencing by failing to present "substantial mitigation evidence," failing to present expert testimony regarding Petitioner's mental health and its connection to crimes, failing to request an expert on addiction and poly-substance abuse, failing to subpoena certain witnesses to testify at the penalty phase, and being unprepared to rebut testimony of a probation officer who testified at the sentencing hearing. (Doc. 58-1, Ex. 21.) The PCR court granted an

---

[1] "RT" refers to the court reporter's transcript.

[2] Prior to trial Petitioner's counsel retained three experts who examined Petitioner. Dr. Pablo Stewart, a forensic psychiatrist, diagnosed Petitioner with Post-Traumatic Stress Disorder, major depressive disorder, Attention Deficit/Hyperactivity Disorder, cognitive disorder NOS, and polysubstance dependence. (Doc. 59-4, Ex. 39.) Dr. John Wicks, a clinical neuropsychologist, diagnosed Petitioner with Attention Deficit/Hyperactivity Disorder, polysubstance abuse and dependence, and cognitive disorder NOS. (Doc. 59-5, Ex. 43.) Dr. Richard Lanyon, a psychologist, diagnosed Petitioner with severe methamphetamine abuse and severe borderline personality disorder. (Doc. 59-6, Ex. 44.)

evidentiary hearing on these ineffective assistance claims and dismissed the remaining claims. (ME 3/10/10.)[3]

At the evidentiary hearing, which began in March 2011, Petitioner presented testimony from trial counsel, who discussed their decision not to permit Petitioner to be examined by the State's mental health expert. They testified that they were "flying blind" because this was their first trial since *Ring*[4] and there was no direct authority to guide their decision about whether to allow Petitioner to be examined by an independent expert before the guilt phase of trial.[5] (*See* RT 3/3/11 at 36–39.)

Petitioner also called Dr. Edward French, a pharmacologist, who testified about the behavioral effects of methamphetamine. Dr. French opined that methamphetamine affected Petitioner's ability to control his actions at the time of the crimes. (*Id.* at 74.) He also testified that the effects of chronic methamphetamine use can include depression, hallucinations, aggressive behavior, and possible brain damage. (*Id.* at 66.)

Finally, Petitioner called Dr. Pablo Stewart, the forensic psychiatrist retained by Petitioner's trial counsel. (RT 3/4/11 at 5, 13–14.) Dr. Stewart testified that Petitioner's Post-Traumatic Stress, major depressive disorder, and Attention Deficit Hyperactivity Disorder affected his executive functioning. (*Id.* at 48.) He explained that those conditions predated Petitioner's substance abuse and contributed to it because untreated

---

[3] "ME" refers to the court's minute entries.

[4] *Ring v. Arizona*, 536 U.S. 584 (2002), mandated that a jury must determine the existence of factors necessary for imposition of the death sentence. Prior to *Ring*, in Arizona the trial judge made the sentencing decision in death penalty cases. *Ring* invalidated the statute in place at the time of Petitioner's crime and arrest. He was tried and sentenced under the new statutory scheme that provided for jury sentencing.

[5] Before trial Petitioner filed a special action in the Arizona Supreme Court to challenge the trial court's ruling excluding testimony from his experts. At the time of the special action the supreme court had accepted jurisdiction in *Phillips v. Araneta*, 208 Ariz. 280, 283, 93 P.3d 480, 483 (2004), to consider the issue of whether a court can compel a defendant to participate in a mental health examination with the State's expert. The supreme court denied Petitioner's request for a stay pending its decision in *Phillips*. In 2004, after Petitioner's trial, the court held that once a defendant puts his mental health in issue "during the penalty phase of a capital trial," a trial court may order the defendant to submit to a mental examination by the State's expert. *Phillips*, 208 Ariz. 283, 93 P.3d at 483.

1  mental illness is a risk factor for substance abuse. According to Dr. Stewart, Petitioner
2  used drugs to deal with the symptoms of his disorders. (*Id.* at 48–49.)

3  The parties stipulated to the admission of reports from neuropsychologists
4  Dr. Karen Froming, an expert retained by Petitioner, and Dr. Kiran Amin, retained by the
5  State. (RT 6/10/11 at 4.) The State then called Dr. Steven Pitt, a forensic psychiatrist. (*Id.*
6  at 7.) Dr. Pitt noted Petitioner's history of drug abuse and diagnosed him with depressive
7  disorder, not otherwise specified ("NOS"); personality disorder NOS with antisocial
8  traits; and a "rule out" diagnosis of pedophilia. (*Id.* at 16, 35–39.) He testified that
9  Petitioner's drug use and mental conditions were not causally connected to the sexual
10 assault and murder, and that his behavior at the time of the crimes was conscious and
11 purposeful. (*Id.* at 30–35.) He also expressed skepticism about Petitioner's claim that just
12 prior to the crimes he had attempted to kill himself with an injection of heroin, and
13 opined that Petitioner was malingering with respect to his inability to recall certain details
14 of the crimes. (*Id.* at 34–36.)

15 The PCR court denied relief. It found that trial counsel's decision not to allow
16 Petitioner to be examined by the State's expert—thereby forfeiting the opportunity to
17 present expert mental health evidence at sentencing—did not constitute deficient
18 performance because the decision was supported by two strategic grounds: counsel's
19 good faith belief that allowing Petitioner to be interviewed by the State's experts would
20 violate his Fifth and Sixth Amendment rights, and the fact that presenting mental health
21 evidence would have opened the door to unfavorable rebuttal evidence from the State.
22 (ME 1/12/12 at 4.)

23 The court also found that Petitioner was not prejudiced by counsel's performance
24 at sentencing because the omitted mental health evidence was "somewhat cumulative" to
25 the evidence that was presented at trial and was susceptible to impeachment by the
26 State's experts. (*Id.* at 8.) The court also noted that the Arizona Supreme Court in its
27 independent review had affirmed the death sentence even after taking into account the
28

- 7 -

mitigating information about Petitioner's dysfunctional childhood and substance abuse history. (*Id.* at 9.)

On September 25, 2012, the Arizona Supreme Court denied Petitioner's petition for review. Petitioner filed his petition for writ of habeas corpus in this Court on July 3, 2013. (Doc. 38.)

## APPLICABLE LAW

Federal habeas claims are analyzed under the framework of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Pursuant to 28 U.S.C. § 2254(d), a petitioner is not entitled to habeas relief on any claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court has emphasized that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). In *Harrington v. Richter*, 562 U.S. 86, 101 (2011), the Supreme Court clarified that under § 2254(d), "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

In *Cullen v. Pinholster*, 132 S. Ct. 1388, 1398 (2011), the Court reiterated that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *See Murray v. Schriro*, 745 F.3d 984, 998 (9th Cir. 2014) ("Along with the significant deference AEDPA requires us to afford state courts' decisions, AEDPA also restricts the scope of the evidence that we can rely on in the normal course of discharging our responsibilities under § 2254(d)(1)."); *Runningeagle v. Ryan*, 686 F.3d 758, 773–74 (9th Cir. 2012) (explaining that *Pinholster* governs

discovery, expansion of the record and evidentiary hearings). The Ninth Circuit has observed that "*Pinholster* and the statutory text make clear that this evidentiary limitation is applicable to § 2254(d)(2) claims as well." *Gulbrandson v. Ryan*, 738 F.3d 976, 993 n.6 (2013) (citing § 2254(d)(2) and *Pinholster*, 131 S. Ct. at 1400 n.7). Therefore:

> for claims that were adjudicated on the merits in state court, petitioners can rely only on the record before the state court in order to satisfy the requirements of § 2254(d). This effectively precludes federal evidentiary hearings for such claims because the evidence adduced during habeas proceedings in federal court could not be considered in evaluating whether the claim meets the requirements of § 2254(d).

*Id.* at 993–94.

Along with the AEDPA, the following principles govern evidentiary development in habeas cases.

**I.     Discovery**

A habeas petitioner is not entitled to discovery "as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993). Rule 6 of the Rules Governing Section 2254 Cases provides that:

> A judge may, for *good cause*, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. . . . A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

Rule 6(a) and (b), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (emphasis added).

"[A] district court abuse[s] its discretion in not ordering Rule 6(a) discovery when discovery [i]s 'essential' for the habeas petitioner to 'develop fully' his underlying claim." *Dung The Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005) (quoting *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997)). However, courts should not allow a petitioner to "use federal discovery for fishing expeditions to investigate mere speculation." *Calderon v. United States Dist. Ct. for the N. Dist. of Cal. (Nicolaus),* 98 F.3d 1102, 1106 (9th Cir. 1996); *see also Rich v. Calderon,* 187 F.3d 1064, 1067 (9th Cir. 1999) (habeas corpus is not a fishing expedition for petitioners to "explore their case in

search of its existence") (quoting *Aubut v. State of Maine,* 431 F.2d 688, 689 (1st Cir. 1970)).

Whether a petitioner has established "good cause" for discovery under Rule 6(a) requires a habeas court to determine the essential elements of the petitioner's substantive claim and evaluate whether "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

## II.     Evidentiary hearing and expansion of the record

While historically the district court had considerable discretion to hold an evidentiary hearing to resolve disputed issues of material fact, *see Townsend v. Sain*, 372 U.S. 293, 312, 318 (1963), *overruled in part by Keeney v. Tamayo–Reyes*, 504 U.S. 1 (1992), *and limited by* § 2254(e)(2); *Baja v. Ducharme*, 187 F.3d 1075, 1077–78 (9th Cir. 1999), that discretion is significantly circumscribed by § 2254(e)(2) of the AEDPA. *See Baja*, 187 F.3d at 1077–78. Section 2254 provides that:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2); see *Williams*, 529 U.S. at 437 ("If there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under § 2254(e)(2)'s opening clause, and he will be excused from showing compliance with the balance of the subsection's requirements.").

An evidentiary hearing in federal court is precluded if the petitioner's failure to develop a claim's factual basis is due to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432. A hearing is not barred when a petitioner diligently attempts to develop the factual basis of a claim in state court and is "thwarted, for example, by the conduct of another or by happenstance was denied the opportunity to do so." *Id.*; *see Baja,* 187 F.3d at 1078–79.

When the factual basis for a particular claim has not been fully developed in state court, a district court first determines whether the petitioner was diligent in attempting to develop the factual record. *See Baja*, 187 F.3d at 1078. The diligence assessment is an objective one, requiring a determination of whether a petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams*, 529 U.S. at 435. For example, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to sufficiently investigate and present the evidence to the state court. *Id.* at 438–39, 442.

Absent unusual circumstances, diligence requires that a petitioner "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams*, 529 U.S. at 437. The mere request for an evidentiary hearing, however, may not be sufficient to establish diligence if a reasonable person would have taken additional steps. *See Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) (finding lack of diligence where petitioner failed to present affidavits of family members that were easily obtained without court order and with minimal expense); *Alley v. Bell*, 307 F.3d 380, 390–91 (6th Cir. 2002) (finding lack of diligence where petitioner knew of and raised claims in state court but failed to investigate all factual grounds in support of the claims); *Koste v. Dormire*, 345 F.3d 974, 985–86 (8th Cir. 2003) (finding lack of diligence where there was no effort to develop the record or assert any facts to support claim); *McNair v. Campbell*, 416 F.3d 1291, 1299–1300 (11th Cir. 2005) (finding lack of diligence where

1 petitioner did not develop evidence available through petitioner, family members, and
2 literature, and did not appeal of denial of funds and hearing)

3 In sum, if a court determines that a petitioner has not been diligent in establishing
4 the factual basis for his claims in state court, it may not conduct a hearing unless the
5 petitioner satisfies one of § 2254(e)(2)'s narrow exceptions. If, however, the petitioner
6 has not failed to develop the factual basis of a claim in state court, the court considers
7 whether a hearing is appropriate or required under the criteria set forth in *Townsend.* 372
8 U.S. 293; *see Baja*, 187 F.3d at 1078.

9 Pursuant to *Townsend*, a federal district court must hold an evidentiary hearing in
10 a § 2254 case when the facts are in dispute, the petitioner "alleges facts which, if proved,
11 would entitle him to relief," and the state court has not "reliably found the relevant facts"
12 after a "full and fair evidentiary hearing," at trial or in a collateral proceeding. *Townsend*,
13 372 U.S. at 312–13; *cf. Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (explaining
14 that "an evidentiary hearing is not required on issues that can be resolved by reference to
15 the state court record"); *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

16 In any other case in which diligence has been established, the district court "has
17 the power, constrained only by his sound discretion, to receive evidence bearing upon the
18 applicant's constitutional claim." *Id.* at 318. However, if a "habeas applicant was
19 afforded a full and fair hearing by the state court resulting in reliable findings, [the court]
20 may, and ordinarily should, accept the facts as found in the hearing." *Id.*

21 Under Rule 7 of the Rules Governing Section 2254 Cases, a federal habeas court
22 is authorized to expand the record to include additional material relevant to the petition.
23 Section 2254(e) (2), as amended by the AEDPA, limits a petitioner's ability to present
24 new evidence through a Rule 7 motion to the same extent that it limits the availability of
25 an evidentiary hearing. *See Cooper–Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir.
26 2005) (applying § 2254(e)(2) to expansion of the record when intent is to bolster the
27 merits of a claim with new evidence) (citing *Holland v. Jackson*, 542 U.S. 649, 652–53
28 (2004) (per curiam)). Accordingly, when a petitioner seeks to introduce new affidavits

1  and other documents never presented in state court, he must either demonstrate diligence
2  in developing the factual basis in state court or satisfy the requirements of §
3  2254(e)(2)(A) & (B).

## **DISCUSSION**

6  Petitioner's requests for evidentiary development encompass each of the 50 claims
7  raised in his 250-page habeas petition. (Doc. 56; *see* Doc. 38.) The scope of the requests,
8  which suggests an attempt to relitigate Petitioner's trial and sentencing, is not consonant
9  with the purpose of habeas review. "Although state prisoners may sometimes submit new
10 evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage
11 them from doing so." *Pinholster*, 131 S. Ct. at 1401. A federal court in habeas review is
12 "not an alternative forum for trying facts and issues which a prisoner made insufficient
13 effort to pursue in state proceedings." *Williams*, 529 U.S. at 437; *see Richter*, 562 U.S. at
14 103 ("Section 2254(d) is part of the basic structure of federal habeas jurisdiction,
15 designed to confirm that state courts are the principal forum for asserting constitutional
16 challenges to state convictions"); *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) ("[T]he
17 state trial on the merits [should be] the 'main event,' so to speak, rather than a 'tryout on
18 the road' for what will later be the determinative federal habeas hearing"). The Court
19 assesses the requested evidentiary development with these principles in mind.

20 **I.    Discovery**

21 Petitioner seeks an order directing the disclosure of "all files and records" or "all
22 files and reports" from 59 different institutions and agencies. (Doc. 56 at 18–23.) He also
23 seeks to depose more than 120 witnesses. (*Id.* at 24–28.) The scope of the discovery
24 appears to encompass any entity or individual with any connection to or knowledge of
25 Petitioner or his family. He also seeks to depose several of the jurors from his trial. (*Id.* at
26 28.) Petitioner contends that the information is "relevant to a clear picture of [his]
27 personal history and the relevant information trial counsel should have presented, the

composition of the jury, and the overall effects of the acts or omission of trial, direct appeal, and post-conviction counsel." (*Id.*) The requests will be denied.

Petitioner fails to show good cause for the discovery. Not surprisingly, given their scope, Petitioner's discovery requests lack the specificity required by Rule 6. Petitioner essentially seeks to reinvestigate his case and relitigate the penalty phase of his trial. He does not allege specific, relevant facts that might be found in the requested discovery or obtained from the requested depositions. He acknowledges, in fact, that many of the records he seeks may no longer exist. (Doc. 56 at 23 n.1.) Petitioner's discovery requests constitute the type of "fishing expedition" Rule 6 does not sanction. *See Kemp v. Ryan*, 638 F.3d 1245, 1260 (9th Cir. 2011) ("[T]he desire to engage in [an improper fishing] expedition cannot supply 'good cause' sufficient to justify discovery."); *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997) ("Rule 6 does not, however, sanction fishing expeditions based on a petitioner's conclusory allegations."); *Teti v. Bender*, 507 F.3d 50, 60 (1st Cir. 2007) (denying discovery request because petitioner "did not comply with the specific requirements of Rule (6)(b); his request for discovery is generalized and does not indicate exactly what information he seeks to obtain. A habeas proceeding is not a fishing expedition"). Petitioner's generalized statements regarding the potential existence of discoverable material does not constitute "good cause."

Other factors preclude discovery. Petitioner asserts that the requested discovery is relevant to Claims 1–5, 8–10, 14–16, 19, 22–30, 35, and 50. Claims 1–4, 9, and 10 allege ineffective assistance of counsel at sentencing. The claims were denied on the merits by the PCR court.[6] Therefore, under *Pinholster*, this Court's review of the state court's decision is limited to the record before the state court, and Petitioner is not entitled to evidentiary development. *Pinholster*, 131 S. Ct. at 1398; *see Runningeagle*, 686 F.3d at

---

[6] Claim 10 alleges that counsel failed to investigate and obtain records relevant to Petitioner's "life history." (Doc. 38 at 131.) Although Petitioner asserts that this claim was not presented in state court (*id.* at 130), the allegations in Claim 10 cannot be distinguished from the PCR claim that counsel failed to investigate and present substantial mitigating evidence. (Doc. 58-1, Ex. 21.)

- 14 -

1  773 (explaining that the petitioner was "not entitled to an evidentiary hearing or
2  additional discovery in federal court because his claim is governed by 28 U.S.C. §
3  2254(d)(1)"). Claims 5, 8, 14, 19, 22, and 50 were also denied on the merits in state court,
4  so Petitioner is not entitled to discovery on those claims. *Id.*

5  The remaining claims for which Petitioner seeks discovery were either not
6  presented in state court or dismissed by the PCR court as precluded (Claims 15, 16, 23–
7  30, and 35). In either case, Petitioner is not entitled to evidentiary development. *See*
8  *Runningeagle*, 686 F.3d at 773–74. Moreover, the factual information Petitioner seeks
9  about his background is not relevant to the legal issues raised in many of these claims.

10  Finally, the Court will deny Petitioner's request to depose jurors "regarding their
11  experiences related to Petitioner's trial." (Doc. 56 at 28.) Petitioner offers no suggestion
12  as to what information he would seek in such depositions, and the Federal Rules of
13  Evidence place significant limitations on the admissibility of testimony about a jury's
14  deliberations. Fed. R. Evid. 606(b) (prohibiting testimony "as to any matter or statement
15  occurring during the course of the jury's deliberations or the effect of anything upon that
16  or any other juror's mind or emotions as influencing the juror to assent to or dissent from
17  the verdict"); *see Tanner v. Unites States*, 483 U.S. at 107, 117 (1987) (noting firmly
18  established common-law rule that juror testimony is inadmissible to impeach a jury
19  verdict); *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000) (explaining that "juror
20  testimony about the subjective effect of evidence on the particular juror" is not
21  admissible).

22  **II.     Evidentiary hearing and expansion of the record**

23  Petitioner seeks to expand the record with 118 separate exhibits. (Doc. 56 at 29–
24  53; *id.*, Ex's 1–118.) While the exhibits, taken as a whole, are offered in support of all 50
25  of Petitioner's habeas claims, the bulk of the materials are relevant principally to his
26  claims alleging ineffective assistance of counsel at sentencing. The records include social
27  history documents relating to Petitioner and various family members and acquaintances.
28  (*Id.*, Ex's 7–99.) The materials also include declarations from Petitioner's biological

- 15 -

1 father, neighbors, a former girlfriend, trial counsel, PCR counsel, the investigator and
2 mitigation specialist retained by PCR counsel, the mitigation specialist from Petitioner's
3 trial, and two jurors. (*Id.*, Ex's 108–18.) The materials include correspondence between
4 trial team members, as well as billing records from PCR counsel, the investigator and
5 mitigation specialist, and various experts. (*Id.*, Ex's 1–6, 100–04.) Finally, Petitioner
6 offers two new mental health reports with accompanying test results. (*Id.*, Ex's 105–07.)

7 Petitioner also requests an evidentiary hearing on all of his claims. (Doc. 56 at 53.)
8 Expansion of the record and an evidentiary hearing will be denied for the reasons set
9 forth below.

10 First, as stated above, because the PCR court denied Petitioner's claims of
11 ineffective assistance of counsel at sentencing on the merits, this Court's review of the
12 claims is limited to the record before the state court. *Pinholster*, 131 S. Ct. at 1398.

13 Petitioner asserts that *Pinholster* does not limit the Court's ability to allow
14 evidentiary development of claims that were not fully developed in state court despite his
15 diligence. (Doc. 56 at 2.) He also argues that "*Pinholster* said nothing about federal
16 habeas litigation under § 2254(d)(2), or fact development under § 2254(e)." (*Id.* at 2–3.)
17 Petitioner's arguments are not supported by *Pinholster* or subsequent cases.

18 "While allowing a petitioner to supplement an otherwise sparse trial court record
19 may be appealing, especially where he diligently sought to do so in state court, the plain
20 language of *Pinholster* and *Harrington* precludes it." *Ballinger v. Prelesnik*, 709 F.3d
21 558, 562 (6th Cir. 2013); *see Atkins v. Clarke*, 642 F.3d 47, 49 (1st Cir. 2011) (rejecting
22 argument that a state court did not adjudicate claim on the merits unless petitioner was
23 afforded a "full and fair evidentiary hearing"); *see also Donaldson v. Booker*, 505
24 Fed.Appx. 488, 493 (6th Cir. 2012) (finding *Pinholster* applies in cases where "petitioner
25 requested an evidentiary hearing in state court and was thereby not at fault for failure to
26 develop the factual record in state court"); *Taylor v. Simpson*, No. 06-CV-181-JBC, 2012
27 WL 404929, at *3 (E.D.Ky. February 6, 2012) ("Notwithstanding Taylor's argument that
28 *Pinholster* addressed only a fully developed claim, adjudicated on the merits in state

court, and decided in federal court under § 2254(d)(1) and that *Pinholster* did not concern habeas litigation under § 2254(d)(2), he is not entitled to discovery on his *Batson* claim under 2254(d)(2)."); *Lewis v. Ayers*, No. 02-13-KJM-GGH-DP, 2011 WL 2260784, at *5–6 (E.D.Cal. June 7, 2011) ("Nor will an assertion—that because the state record was incomplete, there was no adjudication on the merits—operate to avoid the [*Pinholster*] holding. An adjudication on the merits is just that regardless of one's view on the completeness of the record on which the ruling was made.").

In any event, Petitioner did have an opportunity to fully develop and present the facts supporting his claim of ineffective assistance of counsel at sentencing, and the PCR court ruled on the claim after holding an evidentiary hearing. *See Wood v. Ryan*, 693 F.3d 1104, 1122 (9th Cir. 2012) (finding petitioner not entitled to evidentiary hearing where "the record details counsel's performance" and because the ineffective assistance of counsel claim was adjudicated on the merits in the PCR proceedings so review is limited to the state court record).

Finally, even if *Pinholster* did not bar evidentiary development on Petitioner's claim of ineffective assistance of counsel at sentencing, Petitioner has not shown that he was diligent in state court for purposes of § 2254(e)(2) in obtaining the additional facts he now seeks to present.

Petitioner maintains that he was "diligent in developing the factual bases of the claims for which he now seeks evidentiary development." (Doc. 56 at 15.) He suggests that the state court's failure to hold an evidentiary hearing on all of his PCR claims constituted "interference by the State" so that any failure to develop the facts supporting his claims was the fault of the state court. (*Id.* at 16–17.) The record does not support this argument.

Petitioner does not specify what evidence he was prevented from developing in state court due to the scope of the PCR court's evidentiary hearing. The hearing addressed Petitioner's allegations that trial counsel performed ineffectively at sentencing by failing to "present substantial mitigation evidence," including expert mental health

testimony. The state court granted Petitioner's requests for the appointment of an investigator, a mitigation specialist, a neuropsychologist, a pharmacologist, and other experts. The mitigation specialist gathered records, interviewed family members, and prepared a lengthy social history report. The PCR court did nothing to hinder, interfere with, or thwart Petitioner's efforts to obtain the information he now seeks to present in federal court. *Cf. Correll v. Stewart*, 137 F.3d 1404, 1413 (9th Cir. 1998) ("Simply put, the state cannot successfully oppose a petitioner's request for a state court evidentiary hearing, then argue in federal habeas proceedings that the petitioner should be faulted for not succeeding."); *Libberton v. Ryan*, 583 F.3d 1147, 1165 (9th Cir. 2009) (finding petitioner diligent where the state court refused to fund mitigation investigation and denied evidentiary hearing).

Petitioner had every opportunity in state court to obtain and present the information he offers now. His failure to do so constitutes a lack of diligence. *See Alley*, 307 F.3d at 390–91 (finding petitioner was not entitled to evidentiary hearing on his unexhausted claims of judicial bias, given his failure to pursue claims in state court despite his awareness of alleged bias on part of trial judge and evidentiary hearing conducted on bias issue in state court).

Petitioner does not argue that he can meet the exceptions to the (e)(2) diligence requirement. Therefore, he is not entitled to expand the record or to an evidentiary hearing.

Finally, Petitioner concedes that a number of his habeas claims were not presented in state court. With respect to these claims, he argues that evidentiary development is necessary to establish cause for their default under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). (Doc. 56 at 53.)

Pursuant to *Martinez*, a petitioner may establish cause for procedural default of a claim of ineffective assistance of trial counsel by demonstrating that PCR counsel was ineffective and the underlying ineffective assistance of trial counsel claim has some merit. 132 S. Ct. at 1318; *see Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012). The Ninth

Circuit has extended the holding in *Martinez* to apply to procedurally defaulted claims of ineffective assistance of appellate counsel. *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1294–95 (9th Cir. 2013).

Of the claims Petitioner concedes were not presented in state court, 13 allege ineffectiveness of trial and/or appellate counsel.[7] Petitioner asserts that he "will demonstrate at an evidentiary hearing that post-conviction counsel fell below the standards of a minimally competent capital post-conviction attorney when she failed to raise these meritorious claims." (*See, e.g.*, Doc. 38 at 110–11.) He does not specify, however, what new facts would be relevant to a consideration of PCR counsel's effectiveness. The Court finds that an evidentiary hearing is not warranted.

The cause and prejudice analysis under *Martinez* is based on an assessment of the defaulted ineffective assistance claims. In Petitioner's case, none of these claims require new evidence to evaluate the effectiveness of trial or appellate counsel.

For example, Petitioner alleges that trial counsel performed ineffectively in failing to ensure that a complete trial record was created (Claim 6) and that appellate counsel performed ineffectively by failing to raise the issue on appeal (Claim 7). Other claims relate to counsel's handling of evidentiary issues, including the medical examiner's testimony (Claims 12 and 13) and the admission of the ligature Petitioner used to strangle Elizabeth (Claim 18). Petitioner also alleges appellate counsel performed ineffectively by failing to raise a claim that his due process rights were violated when he was "forced" to proceed to trial in the immediate aftermath of *Ring* (Claim 16); failing to challenge multiple instances of prosecutorial misconduct (Claim 21); failing to raise a claim that the trial court improperly instructed the jury about its sentencing options (Claims 24, 26); failing to challenge the trial court's exclusion of execution-impact evidence at sentencing (Claim 28); failing to allege that the Arizona Supreme Court's independent review of the (F)(6) aggravating factor was flawed (Claim 30); failing to raise a claim alleging an *Ex*

---

[7] *Martinez* does not apply to the remaining claims, Claims 11, 15, 17, 23, 25, 27, 29, 31, 34–50.

*Post Facto* violation based on Petitioner's sentencing under Arizona's post-*Ring* sentencing scheme (Claim 32); and failing to challenge the (F)(6) aggravator (Claim 33).

The record is complete with respect to these ineffective assistance of trial and appellate counsel claims. *See Wood*, 693 F.3d at 1122. Because there are no factual disputes concerning the underlying defaulted claims, an evidentiary hearing to assess PCR counsel's performance would be "nothing more than a futile exercise." *Totten*, 137 F.3d at 1176; *see Beardslee v. Woodford*, 358 F.3d 560, 585 (9th Cir. 2004) (explaining that "an evidentiary hearing is not required if the claim presents a purely legal question and there are no disputed facts").

## CONCLUSION

For the reasons set forth above, Petitioner is not entitled to evidentiary development on his habeas claims. The Court will rule on the claims in a later order.

Accordingly,

**IT IS ORDERED DENYING** Petitioner's motion for evidentiary development (Doc. 56).

Dated this 9th day of September, 2015.

Honorable John J. Tuchi
United States District Judge