**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Ray Newell,<br><br>           Petitioner,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>           Respondents. | No. CV-12-02038-PHX-JJT<br><u>DEATH PENALTY CASE</u><br><br>**ORDER** |

      Before the Court is Petitioner Steven Ray Newell's Motion for Temporary Stay and Abeyance and to Legally Represent Petitioner in State Court Proceedings. (Doc. 72.) Newell asks the Court to stay and hold his case in abeyance while he pursues state court relief under *Lynch v. Arizona*, 136 S. Ct. 1818 (2016) (per curiam). He also seeks permission for his federal habeas counsel to appear on his behalf in state court. Respondents filed a response in opposition. (Doc. 73.) For the reasons set forth below, the motion is denied.

## BACKGROUND

      In 2001, Newell sexually assaulted and murdered an eight-year-old girl. A jury convicted him of first-degree murder, sexual conduct with a minor, and kidnapping. He was sentenced to death on the first-degree murder conviction. The Arizona Supreme Court affirmed the convictions and sentences. *State v. Newell*, 212 Ariz. 389, 132 P.3d 833 (2006). After unsuccessfully pursuing post-conviction relief, Newell filed a petition for writ of habeas corpus in this Court. (Doc. 38.) In Claim 25 of his habeas petition,

Newell alleges that the trial court violated his due process rights by instructing the jury that if it did not sentence Newell to death, he could be sentenced to life with the possibility of parole after 35 years when, in fact, the earliest possibility of parole would have been after 58 years. (*Id.* at 183–84.) Newell did not raise this claim in state court, and in Claim 26 he alleges that appellate counsel performed ineffectively in failing to do so. (*Id.* at 186.) Newell asks the Court to stay the case so that he can return to state court to raise these allegations.

## ANALYSIS

When a petitioner has an available remedy in state court that he has not procedurally defaulted, it is appropriate for the federal court to stay the habeas proceedings if (1) there was good cause for the petitioner's failure to exhaust his claims first in state court, (2) his unexhausted claims are potentially meritorious, and (3) there is no indication that he engaged in intentionally dilatory litigation tactics. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

Newell contends that under Rule 32.1(g) of the Arizona Rules of Criminal Procedure, the United States Supreme Court's recent decision in *Lynch* provides an available remedy in state court. Rule 32.1(g) provides that a defendant may file a petition for post-conviction relief on the ground that "[t]here has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence." Ariz. R. Crim. P. 32.1(g).

Arizona courts have described a significant change in the law as a "transformative event," *State v. Shrum*, 220 Ariz. 115, 118, 203 P.3d 1175, 1178 (2009), and a "clear break" or "sharp break" with the past. *State v. Slemmer,* 170 Ariz. 174, 182, 823 P.2d 41, 49 (1991). "The archetype of such a change occurs when an appellate court overrules previously binding case law." *Shrum*, 220 Ariz. at 118, 203 P.3d at 1178. A statutory or constitutional amendment representing a definite break from prior law can also constitute a significant change in the law. *Id.* at 119, 203 P.3d at 1179; *see State v. Werderman*, 237 Ariz. 342, 343, 350 P.3d 846, 847 (App. 2015).

In *Lynch*, 136 S. Ct. 1818, the Supreme Court applied *Simmons v. South Carolina,* 512 U.S. 154 (1994), to a capital sentencing in Arizona. *Simmons* held that when future dangerousness is an issue in a capital sentencing determination, the defendant has a due process right to require that his sentencing jury be informed of his ineligibility for parole. 512 U.S. at 171.

In *Lynch*, the defendant was convicted of murder and other crimes. 136 S. Ct. at 1818. Before the penalty phase of his trial began, the state successfully moved to prevent his counsel from informing the jury that, if the defendant did not receive a death sentence, he would be sentenced to life in prison without possibility of parole.[1] *Id.* at 1819. The jury sentenced him to death. *Id.* On appeal, Lynch argued that, because the state had made his future dangerousness an issue in arguing for the death penalty, the jury should have been given a *Simmons* instruction stating that the only non-capital sentence he could receive under Arizona law was life imprisonment without parole. *Id.* The Arizona Supreme Court affirmed, holding that the failure to give the *Simmons* instruction was not error because the defendant could have received a life sentence that would have made him eligible for release after 25 years—even though any such release would have required executive clemency. *Id.* at 1820.

The United States Supreme Court reversed. *Id.* The Court reiterated that under *Simmons* and its progeny, "where a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole," the Due Process Clause "entitles the defendant to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel." *Id.* at 1818 (internal quotations omitted). The Court explained that neither the possibility of executive clemency nor the possibility that state parole statutes will be amended can justify refusing a parole-ineligibility instruction. *Id.* at 1820.

---

[1] When Lynch and Newell were tried, Arizona law prevented all felons who committed offenses after 1993 from obtaining parole. *See* A.R.S. § 41-1604.09(I).

1 Newell concedes that *Lynch* was not a clear break from the past and did not overturn binding precedent. (Doc. 74 at 2.) Instead, he argues that *Lynch* was a "transformative event . . . for *Arizona* law [because] it explicitly decided that Arizona's treatment of the *Simmons* issue was contrary to due process." (*Id.* at 3.) Therefore, according to Newell, "he now has an available state court remedy for the ongoing federal constitutional error, which was not available under *state* law until *Lynch*." (*Id.*)

The Court concludes that *Lynch* does not represent a change in the law. *Lynch* simply applied existing law to an Arizona case. It was not a transformative event of the kind described by Arizona courts in interpreting Rule 32.1(g). In *Shrum*, for example, the Arizona Supreme Court cited *Ring v. Arizona*, 536 U.S. 584 (2002), as a "significant change in the law." 220 Ariz. at 119, 203 P.3d at 1179. *Ring* "expressly overruled" *Walton v. Arizona*, 497 U.S. 639 (1990). As the Arizona Supreme Court explained, "before *Ring*, a criminal defendant was foreclosed by *Walton* from arguing that he had a right to trial by jury on capital aggravating factors; *Ring* transformed existing Sixth Amendment law to provide for just such a right." *Shrum*, 220 Ariz. at 119, 203 P.3d at 1179.

In contrast to the holding in *Ring*, *Lynch* did not transform Arizona law. The holding does not constitute a significant change in law for purposes of Rule 32.1(g). Therefore, Newell does not have an available remedy in state court, and a stay is inappropriate.

In addition, Newell's allegations are not potentially meritorious, as required for the Court to issue a stay under *Rhines*. Newell's due process rights were not violated. The trial court instructed the jury that if it did not sentence Newell to death, the court would sentence him "either to life imprisonment without the possibility of parole, or life without parole until at least 35 years have passed." (RT 2/23/04, a.m., at 13; RT 2/24/04 at 50–51.) Newell argues in his habeas petition that the instruction was incorrect because he actually was not eligible for parole for 58 years. (Doc. 38 at 185.) He now argues that he

not was eligible for parole at all and therefore under *Lynch* his due process rights were violated by the trial court's instructions. (*See* Doc.72 at 3.)

Under *Lynch* and *Simmons*, due process requires a parole ineligibility instruction only where the state argues that the defendant's future dangerousness militates in favor of the death penalty. *See Lynch*, 136 S. Ct. at 1818. Unlike the prosecutors in *Simmons* and *Lynch*, the State did not make an issue of Newell's future dangerousness by arguing that he would "pose a threat to society in the future." *Simmons*, 512 U.S. at 177. The State did not explicitly argue that the jury should impose a death sentence in order to protect society from Newell. See *id.* at 157 (noting the prosecution introduced evidence that the defendant posed a continuing danger to elderly women and argued the jury should impose the death sentence as an act of "self-defense"). Nor did the prosecutor in Newell's case "accentuate[] the clear implication of future dangerousness raised by the evidence." *Kelly v. South Carolina*, 534 U.S. 246, 255 (2002) (prosecution presented evidence that while in prison, Kelly made a knife, attempted to escape, and planned to hold a female guard as a hostage, as well as evidence of "Kelly's sadism at an early age, and his inclination to kill anyone who rubbed him the wrong way.").

Newell does not contend that the State presented evidence or argued that he would be dangerous to society if released. Instead, he asserts that the issue of future dangerousness is inherent in all capital sentencings and that the future dangerous element can be met without the prosecutor making any specific argument about the issue. (*See* Doc. 71 at 4–5.) This assertion is not persuasive, and Newell does not support it with relevant case law. The future dangerousness element cannot be met unless the prosecution offers some evidence or argument that a defendant will be a danger if released from prison. *See Kelly*, 534 U.S. at 254 n.4; *see also Moeller v. Weber*, 635 F. Supp. 2d 1036, 1060 (D.S.D. 2009) ("[T]he Supreme Court has not interpreted or extended its holding in *Simmons* . . . to hold that due process requires that a jury in a capital case be advised that a person subject to life imprisonment is ineligible for parole when . . . the State has presented no evidence at the penalty phase and has not at the

penalty phase argued future dangerousness."), *order amended on denial of reconsideration,* No. CIV. 04-4200, 2010 WL 9519011 (D.S.D. Apr. 9, 2010), and *aff'd,* 649 F.3d 839 (8th Cir. 2011).

Finally, because there was no due process violation, appellate counsel did not perform ineffectively in failing to raise such a claim. *See Jones v. Smith,* 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000) (finding no prejudice when appellate counsel fails to raise an issue on direct appeal that is not grounds for reversal); *Miller v. Kenney,* 882 F.2d 1428, 1434 (9th Cir. 1989) (explaining that appellate counsel remains above an objective standard of competence and does not cause prejudice when he declines to raise a weak issue on appeal). Therefore, Newell's allegation of ineffective assistance of appellate counsel is not potentially meritorious.

## CONCLUSION

Newell is not entitled to a stay. *Lynch* is not a significant change in the law for purposes of Rule 32.1(g). Newell's claim of a due process violation based on the sentencing instructions is not potentially meritorious under *Rhines*.

Having determined that Newell is not entitled to a stay to exhaust these allegations, the Court finds it is not appropriate to authorize the Federal Public Defender's Office to represent him in state court. *See Harbison v. Bell*, 556 U.S. 180, 190 n.7 (2009) ("[A] district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation.").

Accordingly,

**IT IS ORDERED** denying Newell's Motion for Temporary Stay and Abeyance and to Legally Represent Petitioner in State Court Proceedings. (Doc. 72.)

Dated this 20th day of October, 2016.

Honorable John J. Tuchi
United States District Judge